**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-00463-CMA-BNB

INTERNATIONAL ACADEMY OF BUSINESS AND
FINANCIAL MANAGEMENT, LIMITED,
BRETT KING, and
GEOFFREY BARING,

     Plaintiffs,

v.

GEORGE S. MENTZ, and
AMERICAN ACADEMY OF FINANCIAL MANAGEMENT, LLC,

     Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**

---

This matter is before the Court on Plaintiffs International Academy of Business

and Financial Management ("IABFM"), Brett King, and Geoffrey Baring's (collectively,

"Plaintiffs") Motion to Dismiss Defendants' Counterclaims, filed on May 14, 2012.  (Doc.

# 20.)  Jurisdiction is proper under 28 U.S.C. § 1332 (diversity jurisdiction).

## I. BACKGROUND[1]

Defendant George Mentz ("Mentz") is the founder and Chairman of Defendant

American Academy of Financial Management, LLC ("AAFM") (collectively,

---

[1] Unless otherwise noted, the following facts are allegations taken from the "counterclaims" section of Defendants' Answer and are deemed true for purposes of the instant motion.  (*See* Doc. # 14 at 6-23.)  When the Court refers to a specific paragraph in the Answer, the Court is referring to the paragraphs in the counterclaims portion of the Answer.

"Defendants").  (Doc. # 14, ¶ 3.)  AAFM is a United States entity and professional society with more than 50,000 members, associates and affiliates in over 150 countries. (*Id.*, ¶ 4.)  Among other things, AAFM is engaged in the business of developing professional development programs, certification programs, professional designations, copyrighted training programs, evaluating educational partners, adopting relevant trademarks, certification and service marks, and promoting and sanctioning certification training.  (*Id.*)  AAFM and its professional development programs and certifications have been recognized in several countries around the world.  (*Id.*, ¶ 8.)

Defendant Brett King ("King") was under contract as an approved training affiliate of AAFM from March 2007 until he resigned on March 4, 2009.  King had served as a trainer, event coordinator, a webmaster, and teacher for official AAFM and related websites and approved certification courses since 2004.  (*Id.*, ¶ 10.)  From approximately 2006 until he was terminated in March of 2009, Defendant Geoffrey Baring ("Baring") served as a trainer and teacher for AAFM programs.  (*Id.*, ¶ 11.)  King and Baring are both citizens of the Commonwealth of Australia.  (Doc. # 1, ¶¶ 2, 3.)

As a condition of his representation of AAFM, King signed a Schedule B Intellectual Property Rights document (the "Agreement"), containing acknowledgments and covenants about intellectual property belonging to AAFM, promises with respect to fees owed to Mentz and AAFM, the conditional use of AAFM and related intellectual property marks, service marks, and designations, and the non-disclosure of AAFM's

confidential and trade secret information and data.  (*Id.*, ¶ 12; Doc. # 14-1.)  Baring also

"acknowledged and confessed to such agreement."  (*Id.*, ¶ 12.)

King and Baring had access to all of AAFM's intellectual property during their

employment.  (*Id.*, ¶ 14.)  Following their employment with AAFM, King and Baring

formed IABFM.  (*Id.*, ¶ 13.)  IABFM is a non-profit worldwide professional society of

financial practitioners.  (Doc. # 1, ¶ 9.)  IABFM is an entity of Hong Kong and has its

principal place of business in Hong Kong.  (*Id.*, ¶¶ 1, 10.)  Although Defendants include

no relevant facts about IABFM's sphere of business, Defendants have not disputed

Plaintiffs' allegation that "IABFM does not offer services or membership in the United

States" and that "IABFM's more than 200,000 members and affiliates are located in 145

countries throughout the world, but not including the United States."  (*Id.*, ¶¶ 17, 19.)

According to Defendants, King and Baring converted the intellectual property of AAFM

and Mentz to their own use and benefit, (*id.* at ¶ 15), counterfeited AAFM and Mentz's

property and sold it to AAFM and/or Mentz's customers for financial benefit (*id.*, ¶ 16),

orchestrated a campaign of fraud to engage in identity theft and intercept customer

funds of the AAFM (*id.*, ¶ 17), and published false and defamatory emails about AAFM

and Mentz.  (*Id.*, ¶ 18.)

Plaintiffs initiated this civil action on February 23, 2012, bringing state law tort

claims for business disparagement, tortious interference with prospective business

advantage, defamation, and tortious interference with prospective business advantage.

(Doc. # 1, ¶¶ 82-139.)  Defendants answered on April 19, 2012, and brought twelve

counterclaims for: (1) breach of contract; (2) defamation; (3) service mark infringement; (4) violation of Colorado Consumer Protection Act; (5) copyright infringement; (6) civil theft; (7) civil conspiracy; (8) intentional interference with contractual relationships; (9) misappropriation of confidential information and trade secrets; (10) violation of the Computer Fraud and Abuse Act; (11) violated of the Electronic Communications Privacy Act; and (12) Application for Injunctive Relief.  (Doc. # 14 at 6-23.)  All counterclaims are brought by both Defendants against all three Plaintiffs.

Plaintiffs moved to dismiss Defendants' counterclaims on May 14, 2012.  (Doc. # 20.)  Defendants responded on June 21, 2012, thirty-eight days after the instant Motion was filed,[2] and Plaintiffs replied on June 29, 2012.  (Doc. ## 24, 25.)

## II.  STANDARD OF REVIEW

Plaintiffs bring the instant motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Thus, the Court will set forth the proper standard of review for motions under each rule.

---

[2] In their Reply, Plaintiffs request that the Court strike Defendants' Response as untimely.  (Doc. # 25 at 1-2.)  The Local Rules for the District of Colorado provide that "[t]he responding party shall have 21 days after the date of service of a motion, or such lesser or greater time as the court may allow, in which to file a response."  D.C.COLO.LCivR 7.1.C.  Thus, Defendants filed their Response well after the time for filing a response had passed.  As Plaintiffs observe, Defendants have been represented by counsel at all times, never sought an extension of time to file their Response, and have provided no excuse for their untimely filing.  The Court main-tains broad discretion to strike a responsive document as untimely.  *See Curran v. AMI Fire-place Co., Inc.*, 163 F. App'x 714, 718 (10th Cir. 2006) (district court has discretion to strike untimely response).   Although the Court does not condone Defendants' tardiness, the Court finds that consideration of the Response will not change the resolution of Plaintiffs' Motion.  Thus, the Court will exercise its discretion and decline to strike the Response.

**A.     RULE 12(b)(1)**

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate

when the Court lacks subject matter jurisdiction over the claims asserted in the

operative pleading.  As set forth by the Tenth Circuit in *Holt v. United States*, 46 F.3d

1000, 1002-03 (10th Cir. 1995), the standard of review for a Rule 12(b)(1) motion is

as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter
> jurisdiction take two forms.  First, a facial attack on the complaint's
> allegations as to subject matter jurisdiction questions the sufficiency of
> the complaint.  In reviewing a facial attack on the complaint, a district court
> must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint
> and challenge the facts upon which subject matter jurisdiction depends.
> When reviewing a factual attack on subject matter jurisdiction, a district
> court may not presume the truthfulness of the complaint's factual alle-
> gations.  A court has wide discretion to allow affidavits, other documents,
> and a limited evidentiary hearing to resolve disputed jurisdictional facts
> under Rule 12(b)(1).  In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (internal citations

removed).

Further, the burden of establishing subject matter jurisdiction rests on the party

asserting jurisdiction.  *See Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

**B.     RULE 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim is to test "the sufficiency of the allegations within the four corners of the

complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  A complaint will

survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### III.  ANALYSIS

In this Motion, Plaintiffs have moved to dismiss all twelve counterclaims.  The Court will consider each counterclaim in turn.

### A.   FIRST COUNTERCLAIM – BREACH OF CONTRACT

In their First Counterclaim, Defendants allege that King entered into the Agreement with Mentz and AAFM on or about March of 2007, and that Baring accepted the Agreement as binding on him. (Doc. # 14, ¶¶ 20, 21.) Defendants allege that King and Baring breached the Agreement by taking, stealing, and converting AAFM's intellectual property, and disclosing confidential and trade secret information of AAFM. Further, Defendants allege that King and Baring breached the Agreement by failing to pay contractual fees and return property belonging to AAFM. (*Id.*, ¶ 23.)

In their motion to dismiss, Plaintiffs do not appear to challenge the sufficiency of Defendants' allegations for this counterclaim as against King and Baring, and the Court finds that Defendants' allegations are sufficient to state a counterclaim for breach of contract against those plaintiffs. However, Plaintiffs correctly observe that the First Counterclaim does not allege any conduct by IABFM. Thus, IABFM is dismissed as a counterclaim-defendant for the First Counterclaim.[3]

**B.      SECOND COUNTERCLAIM – DEFAMATION**

In their Second Counterclaim, Defendants have alleged three discrete instances of defamation by Plaintiffs. (Doc. # 14, ¶¶ 28, 30, 31.) The defamatory statements

---

[3] The absence of any allegations of conduct by IABFM also dooms Defendants' Fourth, Fifth, and Seventh Counterclaims against IABFM. However, as discussed below, those counter-claims are dismissed against all Defendants for other reasons.

allegedly occurred on August 16, 2011, May 21, 2009, and March 23, 2009.[4]  (*See id.*)
The Court will treat these as three separate counterclaims.

1.     August 16, 2011 Statement

"In Colorado, the elements of a cause of action for defamation are: (1) a
defamatory statement concerning another; (2) published to a third party; (3) with fault
amounting to at least negligence on the part of the publisher; and (4) either actionability
of the statement irrespective of special or the existence of special damages to the
plaintiff caused by the publication." *McIntyre v. Jones*, 194 P.3d 519, 523-24 (Colo.
App. 2008) (quoting *Williams v. Dist. Court*, 866 P.2d 908, 911 n.4 (Colo. 1993)).  Upon
review of the allegations, the Court finds that the August 16, 2011 statement is sufficient
to form the basis for a counterclaim for defamation.[5]  (*See* Doc. # 14, ¶ 28.)

2.     May 21, 2009 and March 23, 2009 Statements

Plaintiffs contend that any counterclaims for defamation based on the May 21,
2009 or the March 23, 2009 statements are time-barred.  (Doc. # 20 at 5.)  The Court
agrees.  Under Colorado law, there is a one-year statute of limitations for defamation
claims.  *See* Colo. Rev. Stat. § 13-80-103(a).  The cause of action "accrues when

---

[4] Defendants also raise some general allegations that King and Baring adopted pseudonyms
and initiated various smear and defamation campaigns against Plaintiffs.  (Doc. # 14, ¶ 32.)
To the extent that Defendants sought to bring a claim for defamation regarding these state-
ments, such allegations are vague, conclusory, and non-specific.  Defendants have not set
forth the words that are allegedly defamatory, nor have they provided any dates on which
such statements were made.  *See Walters v. Linhof*, 559 F. Supp. 1231, 1234 (D. Colo. 1983).
As such, Defendants have not provided sufficient factual allegations "to state a claim to relief
that is plausible on its face" based on such statements.  *Twombly*, 550 U.S. at 570.

[5] Although Plaintiffs contend that the Second Counterclaim should be dismissed in its entirety,
Plaintiffs make no argument with respect to the August 16, 2011 statement.

8

the defamatory statements are published." *See Conrad v. The Educ. Res. Inst.*, 652

F. Supp. 2d 1172, 1186 (D. Colo. 2009) (citing *Russell v. McMillen*, 685 P.2d 255, 258

(Colo. App. 1984)).  Thus, any counterclaims for defamation based on the May 21, 2009

and March 23, 2009 statements are time-barred because they were published more

than one year before this case commenced.

Defendants' only response to Plaintiffs' statute of limitations argument is their

puzzling assertion that such an argument is "misplaced in a motion to dismiss under

Rule 12(b)(6)."  (Doc. # 24 at 4.)  Defendants fail to support this assertion with any

authority, and courts routinely decide issues relating to statutes of limitations on motions

to dismiss.  *See, e.g.*, *Jackson v. Standifird*, 463 F. App'x 736, 737 (10th Cir. 2012)

("Dismissal of a claim as time-barred is treated as a dismissal for failure to state a

claim); *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997) (applying *de novo*

review to district court's dismissal for failure to state a claim on the grounds that the

claim was time-barred).  Thus, the Court will dismiss with prejudice Defendants'

counterclaims for defamation based on the May 21, 2009 and the March 23, 2009

statements because they are time-barred.  *See Womble v. Salt Lake City Corp.*, 84 F.

App'x 18, 20-21 (10th Cir. 2003) (dismissal of claim as time-barred should be with

prejudice).

## C.    THIRD COUNTERCLAIM – SERVICE MARK INFRINGEMENT (LANHAM ACT)

In their Third Counterclaim, Defendants allege that Plaintiffs' "use and sale" of

their marks constitute trademark infringement under Section 32 of the Lanham Act,

9

15 U.S.C. § 1114, and unfair competition under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a). (Doc. # 14, ¶¶ 51-52.) Plaintiffs assert that the Court lacks

subject matter jurisdiction over this counterclaim.

The Lanham Act "confers broad jurisdictional powers upon the courts of the

United States." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952). Thus,

Congress has the power to regulate foreign trade practices of United States citizens,

even when some of the acts occur outside the territorial boundaries of the United

States. *See id.* at 285-86. In this case, however, it is undisputed that none of the

Plaintiffs are citizens of the United States. (Doc. # 1, ¶¶ 1-3; Doc. # 14, ¶ 2.) Because

none of the Plaintiffs are citizens of the United States, the Court must determine

whether it has subject matter jurisdiction over this counterclaim. *See McBee v. Delica

Co., Ltd.*, 417 F.3d 107, 117 (1st Cir. 2005) (finding that most courts treat the extra-

territoriality application of the Lanham Act as an issue relating to subject matter

jurisdiction).

Although *Bulova Watch* made clear that the Lanham Act has some extrater-

ritorial application, the Supreme Court has not laid down a precise test for when a

district court may exercise extraterritorial jurisdiction over a foreign infringer. *See

McBee*, 417 F.3d at 117. The circuit courts, however, have formulated a variety of tests

for determining when extraterritorial application of the Lanham Act is appropriate.[6] *See

id.* (listing different tests). The most commonly employed test appears to be the one set

---

[6] The parties did not cite to any relevant Tenth Circuit authority on this issue, and the Court has
found none upon independent investigation.

forth by the Second Circuit in *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633

(2d Cir. 1956).  *Vanity Fair* stresses three factors: (1) whether the defendant's conduct

has had a substantial effect on United States commerce; (2) whether the defendant is a

United States citizen; and (3) whether there is conflict with trademark rights established

under foreign law.  *See id.* at 642; *see also Int'l Café*, *S.A.L., v. Hard Rock Café Int'l*

*(U.S.A.), Inc.*, 252 F.3d 1274, 1278-79 (11th Cir. 2001) (applying *Vanity Fair*); *Nintendo*

*of Am., Inc., v. Aeropower Co., Ltd.*, 34 F.3d 246, 250-51 (4th Cir. 1994) (adopting

*Vanity Fair*, although requiring a "significant" rather than a "substantial" effect); *but see*

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393 (9th Cir. 1985) (plaintiff must

show (1) some effect on United States commerce, (2) the effect must be sufficiently

great to present a cognizable injury to plaintiff, and (3) the interests and links to

American commerce must be sufficiently strong in relation to those of other nations);

*McBee*, 417 F.3d 107 at 120 (holding that the Lanham Act grants subject matter

jurisdiction over extraterritorial conduct "only where the conduct has a substantial effect

on United States commerce.").  Although these tests vary slightly, they share the

commonality that extraterritorial application of the Lanham Act is only proper when a

party shows that the infringing activity has a substantial or significant effect on United

States commerce.  *See Basis Int'l Ltd., v. Research in Motion Ltd.*, 827 F. Supp. 2d

1302, 1306 (D.N.M. 2011).

      Upon review of Defendants' Third Counterclaim, the Court finds that Defendants

have not alleged that Plaintiffs' infringing activities had any effect on United States

commerce, let alone a substantial or significant one.  Defendants do not dispute that Plaintiffs are not United States citizens, nor do they offer any allegations that Plaintiffs have used Defendants' marks in connection with any United States commerce.  Given the absence of allegations showing that Plaintiffs' conduct had a substantial or significant effect on United States commerce, this Court lacks jurisdiction over Defendants' Third Counterclaim.  *See Love v. The Mail on Sunday*, 473 F. Supp. 2d 1052, 1056 (C.D. Cal. 2007) (Lanham Act does not apply where there is no evidence that infringing activity by foreign defendants affected United States commerce).

Defendants make two wholly unpersuasive arguments in their Response.  First, Defendants contend that Plaintiffs' argument regarding subject matter jurisdiction is a "bizarre anomaly" because Plaintiffs originally invoked this Court's jurisdiction by initiating this civil action.  (Doc. # 24 at 4.)  However, the fact that the Court may properly exercise personal jurisdiction over Plaintiffs and subject matter jurisdiction over some claims does not necessarily mean that the Court possesses subject matter jurisdiction over all claims.  Second, Defendants note that the "publications in which Plaintiffs' [*sic*] infringe Defendants' registered service marks appear on the internet which is available to viewers and users in the United States."  (*Id.*)  Although not framed as an argument per se, Defendants seem to be suggesting that this Court possesses jurisdiction over extraterritorial trademark infringement by foreign defendants simply because a website is accessible in the United States.  Not surprisingly, Defendants cite no authority for this sweeping proposition.  The allegation that a website is accessible in

12

the United States does not necessarily demonstrate that the allegedly infringing conduct has a substantial or significant effect on United States commerce.  *See Gallup, Inc. v. Bus. Research Bureau (Pvt.) Ltd.*, 688 F. Supp. 2d 915, 925 (N.D. Cal. 2010) (rejecting similar argument as "insufficient, unpersuasive, and unfair").  Defendants do not dispute that Plaintiffs do not offer services or membership in the United States, nor do they allege that Plaintiffs' conduct has had any impact on United States commerce.  Thus, the Court dismisses Defendants' Third Counterclaim for lack of subject matter jurisdiction.

## D.   FOURTH COUNTERCLAIM – VIOLATION OF COLORADO CONSUMER PROTECTION ACT

In their Fourth Counterclaim, Defendants allege that Plaintiffs violated the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-105(a), (b), and (c).  The CCPA was enacted to regulate commercial activities that "because of their nature, may prove injurious, offensive, or dangerous to the public."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003) (citation omitted).  The elements to bring a private cause of action under the CCPA are: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.  *Id.* at 146-47.  Such a claim must be pled with particularity under Fed. R. Civ. P.

13

9(b).  *Gates Corp. v. Dorman Prods., Inc.*, No. 09-cv-02058, 2009 WL 5126556, at *5

(D. Colo. Dec. 18, 2009) (unpublished).  Rule 9(b) provides that "[i]n all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."  Thus, a party claiming fraud must "set forth the time, place and contents

of the false representation, the identity of the party making the false statements and

the consequences thereof."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir.

2000); *see also U.S. ex rel. Lemmon v. Envirocare of Utah*, Inc., 614 F.3d 1163, 1172

(10th Cir. 2010) (the purpose of Rule 9(b) is to afford the defendant fair notice of

plaintiff's claims and the factual grounds upon which they are based).

Defendants' Fourth Counterclaim is woefully inadequate under the *Koch*

standard.  Defendants simply allege that the Plaintiffs' "acts and transactions set forth

above constitute deceptive trade practices."  (Doc. # 14, ¶ 58.)  This allegation does not

identify any particular conduct by Plaintiffs, how such conduct was "unfair or deceptive,"

or where and when such conduct occurred.  *See Hansen v. Auto-Owners Ins. Co.*,

No. 09-cv-02736, 2010 WL 749820, at *3 (D. Colo. Mar. 4, 2010) (unpublished)

(dismissing CCPA claim because the plaintiff failed to identify the allegedly misleading

representations).  Moreover, Defendants do not allege that any such deceptive trade

practices had a significant impact on the public.[7]

---

[7] Under Colorado law, courts consider the following factors to ascertain the public impact of a challenged practice: "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future."  *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 155 (Colo. 2007) (citing *Rhino Linings*, 62 P.3d at 149).

Defendants argue in their Response that their Fourth Counterclaim is sufficient because it "recites the particular statutory provisions alleged to have been violated." (Doc. # 14 at 5.) However, the mere invocation of a statute is not sufficient to state a claim upon which relief may be granted. *See Lemmon*, 614 F.3d at 1172; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Defendants also assert that their Fourth Counterclaim is sufficient because it "makes reference to previous paragraphs of the counterclaim." (Doc. # 14 at 5.) This Court has strongly criticized such use of "shotgun pleading," by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.[8] *Jacobs v. Credit Suisse First Boston*, No. 11-cv-00042, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011) (unpublished) (finding "shotgun pleading" to be a "defect" contributing to an award of sanctions). As this Court noted, "the shotgun pleader foists off one of the pleading lawyer's critical tasks—sifting a mountain of facts down to a handful of those that are relevant to a given claim—onto the reader." *Id.* Courts roundly decry shotgun pleading as a subject of "great dismay," "intolerable," and "in a very real sense . . . [an] obstruction of justice." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 n.9, 10 (11th Cir. 2002). The Court will not act as counsel for Defendants and attempt to determine which facts may support this Fourth Counterclaim. Defendants have not made even a cursory attempt to specify what conduct by Plaintiffs

---

[8] Plaintiffs repeat this defective pleading practice throughout the counterclaims portion of their Answer.

violated the CCPA; thus, the Court will dismiss Defendants' Fourth Counterclaim for failure to state a claim.

## E.    FIFTH COUNTERCLAIM – COPYRIGHT INFRINGEMENT

In their Fifth Counterclaim, Defendants allege that Plaintiffs violated the United States Copyright Act, 17 U.S.C. § 101, *et seq.*  As with Defendants' Lanham Act Counterclaim, this Fifth Counterclaim concerns only extraterritorial conduct by Plaintiffs. "It is well established that copyright laws generally do not have extraterritorial application."[9] *Predator Int'l Inc., v. Gamo Outdoor USA, Inc.*, 863 F. Supp. 2d 1055, 1065 (D. Colo. 2012) (quoting *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)); *see also Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1099 (9th Cir. 1994) ("the mere authorization of acts of infringement that are not cognizable under the United States copyright laws because they occur entirely outside of the United States does not state a claim for infringement under the Copyright Act.").

The extraterritorial application of the Copyright Act represents an element of a claim and does not affect subject matter jurisdiction.  *See Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135, 1138 (D. Colo. 2008); *Litecubes, LLC v. N. Light Prods.*, Inc., 523 F.3d 1353, 1368 (Fed. Cir. 2008) (holding that extraterritorial application of the Copyright Act "is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter

---

[9] An exception exists where the infringing party committed a predicate act of infringement within the United States. *Estate of Stewart v. Sugar Hill Music Pub., Ltd.*, No. 10 Civ. 2632, 2012 WL 4900927, at *5 (S.D.N.Y. Oct. 12, 2012) (unpublished).  Defendants have not alleged that there was any predicate act of infringement that occurred in the United States.

16

jurisdiction").   Because Defendants' Fifth Counterclaim appears to concern only extraterritorial conduct,[10] Defendants have failed to plead a necessary element of a copyright infringement claim, and therefore the Court will dismiss Defendants' Fifth Counterclaim for failure to state a claim upon which relief may be granted.

## F.   SIXTH COUNTERCLAIM – CIVIL THEFT

In their Sixth Counterclaim, Defendants have alleged that Plaintiffs violated C.R.S. § 18-4-405 by "knowingly obtain[ing] control over intellectual and personal property of AAFM and Mentz without their authorization, including web sites, data, member accounts, networking accounts, organizational technology and domain names." (Doc. # 14, ¶¶ 70-71.)  Section 18-4-405 provides that "the owner [of property obtained by theft, robbery, or burglary] may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property."  Thus, to plead a claim for civil theft, Defendants must plead facts showing that Plaintiffs obtained control over Defendants property in circumstances amounting to theft, robbery, or burglary.  *Martinez v. Nash Finch Co.*, --- F. Supp. 2d ---, 2012 WL 3307000, at *7 (D. Colo. 2012).  Defendants have provided no factual allegations to support this claim; rather, Defendants have merely cited to a statute and recited the elements of a claim under that statute.  (Doc. # 14, ¶¶ 69-74.)  Formulaic recitations of the elements of a cause of action do not suffice to state a claim.  *See Iqbal*, 556 U.S. at 678-79.  Thus, the

---

[10] As with their Lanham Act counterclaim, Defendants argue that the Court has jurisdiction because the alleged copyright infringements appeared on a website accessible in the United States.  Defendants have not submitted any authority for this proposition, and given the absence of any allegations that the allegedly infringing conduct had any effect on United States commerce, the Court finds this allegation insufficient to provide this Court with jurisdiction.

Court will dismiss Defendants' Sixth Counterclaim for failure to state a claim upon which relief may be granted.

## G.   SEVENTH COUNTERCLAIM – CIVIL CONSPIRACY

In their Seventh Counterclaim, Defendants have brought a claim for civil conspiracy, alleging that King and Baring agreed to "accomplish the unlawful goals described in paragraphs 1-69 and one or more acts were performed to accomplish the unlawful goals."  (Doc. # 14, ¶ 76.)  Defendants also allege that King and Baring agreed to "accomplish the goals" through "unlawful means" and "unlawful acts."

Defendants' allegations merely recite the elements of a civil conspiracy claim,[11] and provide no factual allegations to support the claim.  As such, the Court will dismiss Defendants' Seventh Counterclaim for failure to state a claim upon which relief may be granted.

## H.   EIGHTH COUNTERCLAIM – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

In their Eighth Counterclaim, Defendants have alleged that Plaintiffs interfered with a contract between Mentz and AAFM and "Mr. Carl Thong and Mr. 'Meocre' Li Kwok Wing."  (Doc. # 14, ¶ 80.)  Although this Counterclaim contains more factual allegations than most of the other counterclaims, Defendants have not alleged that Plaintiffs had knowledge of the contractual relationship between Mentz/AAFM and

---

[11] To establish a civil conspiracy in Colorado, Defendants must show: "(1) two or more persons; an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result."  *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).

Thong/Wing.  In order to intentionally interfere with a contract, Plaintiffs must have been aware of the contractual relationship.  *See Krystkowiak v. W.O. Brisben Cos.*, Inc., 90 P.3d 859, 871 (Colo. 2004) ("To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract.").  As there are no allegations that Plaintiffs were aware of a contract between Mentz/AAFM and Thong/Wing, Defendants' Eighth Counterclaim is dismissed for failure to state a claim upon which relief may be granted.

## I.      NINTH COUNTERCLAIM – MISAPPROPRIATION OF A TRADE SECRET

In their Ninth Counterclaim, Defendants allege that Plaintiffs "took AAFM's confidential and trade secret information without AAFM's authorization," and that Plaintiffs are now using that information to compete against AAFM.  (Doc. # 14, ¶ 91.) Defendants conclusorily assert that AAFM's "trading information meets the definition of trade secrets" under Colorado law.  (*Id.*, ¶ 93.)  The Colorado Uniform Trade Secrets Act ("UTSA") defines a trade secret as:

> [T]he whole or any portion or phase of any scientific or technical infor-mation, design, process, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value.

C.R.S. § 7-74-102(4).  A party alleging misappropriation of a trade secret must produce evidence "of the specific types of confidential information . . . with sufficient particularity to identify the existence of its claimed trade secrets."  *Saturn Sys., Inc. v. Militare*, 252

P.2d 516, 522 (Colo. App. 2011).  Although Defendants assert that its "trading information" satisfies the definition of "trade secrets" under the UTSA, Defendants neglect to define the term "trading information" or otherwise explain which particular trade secrets are alleged to have been misappropriated.  The Court does not accept as true "legal conclusions" that are unsupported by any factual allegations.  *See Iqbal*, 556 U.S. at 678.  Thus, Defendants have not pleaded sufficient facts to show that the information allegedly misappropriated by Plaintiffs satisfies the definition of a "trade secret" under the UTSA.  Thus, Defendants' Ninth Counterclaim is dismissed for failure to state a claim upon which relief may be granted.

## J.  TENTH COUNTERCLAIM – VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

In their Tenth Counterclaim, Defendants allege that Plaintiffs violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(4), which provides that "whoever knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, shall have violated the Act."

The elements of a civil claim premised on § 1030(a)(4) are: (i) the defendant accessed a protected computer, (ii) the access was either unauthorized or beyond the scope of access for which the person was authorized, (iii) the defendant accessed the computer with an intent to defraud and in furtherance of a scheme to defraud, and (iv) the defendant "obtained anything of value" as a result.  *Triad Consultants, Inc. v. Wiggins,* 249 F. App'x 38, 40 (10th Cir. 2007).  In addition, § 1030(g) imposes an

additional element before civil liability may lie – that the defendant "suffers damage or loss by reason of a violation of this section."

Defendants again fail to comply with federal pleading standards because they simply recite the elements of a claim without any supporting factual allegations. (*See* Doc. # 14, ¶ 102) (alleging that Plaintiffs' "knowingly and with intent to defraud, accessed AAFM's protected computer systems, without authorization and/or in excess of authorized access.").  Another deficiency is that Defendants have failed to allege that they suffered any loss from Plaintiffs' alleged unauthorized access of their computer systems; rather, Defendants assert that the value of Plaintiffs' use was more than $5,000.00.  (*Id.*, ¶ 103.)  Value gained by Plaintiffs is not the equivalent of loss suffered by Defendants.  *See* 18 U.S.C. § 1030(e)(11) (defining the term "loss" as "any reasonable cost **to any victim**") (emphasis added).  Thus, a "loss" exists "where the victim of the unauthorized access incurs particular charges or expenses as a result of the unauthorized access."  *Am. Family Mut. Ins. Co. v. Gustafson*, No. 08-cv-02772, 2011 WL 782574, at *4 (D. Colo. Feb. 25, 2011) (unpublished).  No such allegations of "loss" are provided by Defendants; thus, the Court dismisses Defendants' Tenth Counterclaim for failure to state a claim upon which relief may be granted.

**K.    ELEVENTH COUNTERCLAIM – VIOLATION OF ELECTRONIC COMMUNI-
CATIONS PRIVACY ACT**

In their Eleventh Counterclaim, Defendants allege that Plaintiffs violated the

Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701(a), which makes it

an offense to "(1) intentionally access[ ] without authorization a facility through which

an electronic communication service is provided; or (2) intentionally exceed[ ] an

authorization to access that facility; and thereby obtain[ ], alter[ ], or prevent[ ] author-

ized access to a wire or electronic communication while it is in electronic  storage in

such system." Once again, Defendants allege that Plaintiffs violated this statute without

providing sufficient factual allegations.   (Doc. # 14, ¶ 106) (alleging only that Plaintiffs

"intentionally and willfully accessed AAFM's stored electronic communications without

authorization").   Thus, Defendants' Eleventh Counterclaim is dismissed for failure to

state a claim upon which relief may be granted.

**L.    TWELFTH COUNTERCLAIM – APPLICATION FOR INJUNCTIVE RELIEF**

In this Twelfth "Counterclaim," Defendants seek injunctive relief in the form of

a preliminary injunction and, after trial, a permanent injunction.[12]  (Doc. # 14, ¶¶ 110,

111.)  However, no motion is presently before the Court and so the Court will not

address whether a preliminary injunction is warranted on the claims that have not been

dismissed.  Further, at this stage of the case, the Court cannot determine whether

a permanent injunction will be necessary.  Thus, the Court will deny Plaintiffs' motion

---

[12] This counterclaim is a misnomer as injunctive relief "is a type of relief . . . not a cause of action." *Colo. Rail Passenger Ass'n v. Fed. Transit Admin.*, No. 09-cv-01135, 2011 WL 5184524, at *2 (D. Colo. Dec. 15, 2010) (unpublished).

to dismiss Defendants' Twelfth "Counterclaim" without prejudice as it is not yet ripe for consideration.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED that Plaintiffs' Motion to Dismiss Defendants' Counterclaims (Doc. # 20) is GRANTED IN PART and DENIED IN PART. Specifically, it is ORDERED that:

(1)   Defendants' First Counterclaim is DISMISSED against Plaintiff IABFM for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The First Counterclaim remains against Defendants King and Baring;

(2)   Defendants' Second Counterclaim is DISMISSED WITH PREJUDICE insofar as it alleges defamation based on the March 21, 2009 and March 23, 2009 statements allegedly made by Plaintiffs.  The Second Counterclaim remains insofar as it alleges defamation based on the August 16, 2011 statement allegedly made by Plaintiffs;

(3)   Defendants' Third Counterclaim is DISMISSED for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1);

(4)   Defendants' Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Counterclaims are DISMISSED for failure to state a claim under Fed. R. Civ. P. 12(b)(6); and

(5)   Defendants have thirty (30) days to file amended Counterclaims, should they wish to do so.

DATED:  January 18, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge