**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 12-cv-00463-CMA-BNB

INTERNATIONAL ACADEMY OF BUSINESS AND
    FINANCIAL MANAGEMENT, LIMITED,
BRETT KING, and
GEOFFREY BARING,

    Plaintiffs,

v.

GEORGE S. MENTZ, and
AMERICAN ACADEMY OF FINANCIAL MANAGEMENT, LLC,

    Defendants.

---

**ORDER DENYING PLAINTIFFS' MOTION TO**
**DISMISS AMENDED COUNTERCLAIMS**

---

This matter is before the Court on Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Doc. # 31), filed by Plaintiffs Brett King, Geoffrey Baring, and International Academy of Business and Financial Management ("IABFM") on March 11, 2013. Diversity jurisdiction is proper under 28 U.S.C. § 1332. For the reasons discussed below, Plaintiffs' motion is denied.

## I. BACKGROUND

**A.   FACTS**[1]

Defendant/Counterclaim Plaintiff George Mentz ("Mentz") is the founder and chairman of Defendant/Counterclaim Plaintiff American Academy of Financial Management, LLC ("AAFM") (collectively, "Defendants").  (Doc. # 30, ¶ 3.)  A United States entity, AAFM is a professional society with more than 50,000 members, associates, and affiliates in more than 150 countries.  (*Id.*, ¶ 4.)  It offers professional designations as well as professional development, certification, and copyrighted training programs.  AAFM also evaluates educational partners, promotes and sanctions training, and adopts trademarks and certification and service marks.  (*Id.*)

Plaintiffs/Counterclaim Defendants Brett King ("King") and Geoffrey Baring ("Baring") are both Australian citizens.  (Doc. # 1, ¶¶ 2, 3.)  King was employed by AAFM from 2004 to 2007 as a trainer, event coordinator, webmaster, and teacher; from March 2007 until he resigned on March 4, 2009, King worked under contract to AAFM as a training affiliate.  (Doc. # 14, ¶ 10.)  Baring served as a trainer and teacher for AAFM from 2006 until he was terminated in March 2009.  (*Id.* at ¶ 11.)  "Following their service to AAFM," King and Baring formed Plaintiff/Counterclaim Defendant IABFM (*id.*, ¶ 13), a non-profit worldwide professional society of financial practitioners incorporated and principally doing business in Hong Kong (Doc. # 1, ¶¶ 1, 9, 10).

---

[1] Unless otherwise noted, the following facts are allegations from Defendants' Amended Counterclaims (Doc. # 30 at 4-13) and are deemed true for purposes of the instant motion.

King and Baring had access to AAFM's intellectual property "during their contractual service to AAFM." (Doc. # 14, ¶ 14.)  As a condition of King's representation of AAFM, he signed an agreement prescribing acknowledgments and covenants regarding AAFM's intellectual property, fees owed to Defendants, conditional use of service marks and designations, and non-disclosure of AAFM's confidential and trade secret information.  (*Id.*, ¶ 12.)  Baring also "acknowledged and confessed to such agreement."  (*Id.*)

Defendants allege that Plaintiffs converted Defendants' property to their own use (*id.*, ¶ 15), sold such property to Defendants' customers (*id.*, ¶ 16), committed fraud and identity theft "using sophisticated Phishing methods" to intercept AAFM customer funds (*id.*, ¶ 17), and published false and defamatory emails about Defendants "which are still on the internet" (*id.*, ¶ 18).  Defendants do not dispute Plaintiffs' allegation that IABFM offers no services in the U. S. and has no domestic membership among its over 200,000 members and affiliates located in 145 countries.  (Doc. # 1, ¶¶ 17, 19.)

**B.   PROCEDURAL HISTORY**

Plaintiffs initiated this civil action on February 23, 2012, bringing state law tort claims for business disparagement, tortious interference with prospective business advantage, and defamation.  (*Id.*, ¶¶ 82-139.)  In their answer, Defendants brought twelve counterclaims: (1) breach of contract, (2) defamation, (3) service mark infringement, (4) violation of the Colorado Consumer Protection Act, (5) copyright infringement, (6) civil theft, (7) civil conspiracy, (8) intentional interference with

contractual relationships, (9) misappropriation of confidential information and trade secrets, (10) violation of the Computer Fraud and Abuse Act, (11) violation of the Electronic Communications Privacy Act, and (12) application for injunctive relief. (Doc. # 14, ¶¶ 19-110.) Plaintiffs moved to dismiss Defendants' counterclaims, and the Court granted the motion in part and denied it in part, allowing Defendants to file amended counterclaims. *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640 (D. Colo. Jan. 18, 2013) (unpublished).

Defendants filed seven amended counterclaims: (1) breach of contract, (2) defamation, (3) civil theft, (4) intentional interference with contractual relationships, (5) civil conspiracy,[2] (6) copyright infringement, and (7) violation of the Colorado Consumer Protection Act. (Doc. # 30, ¶¶ 19-77.) Plaintiffs moved to dismiss five amended counterclaims on March 11, 2013 (Doc. # 31), Defendants responded on April 1, 2013 (Doc. # 35), and Plaintiffs replied on April 12, 2013 (Doc. # 36).

## II. STANDARD OF REVIEW

Plaintiffs bring the instant motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure of the pleading to state a claim upon which relief can be granted. The purpose of such a motion is to "test the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The "question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley*

---

[2] Defendants conceded that this counterclaim is "clearly against only Baring and King" and further amended it to remove IABFM as a Counterclaim Defendant. (Doc. # 35 at 4.)

*Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009).  A complaint will survive a Rule 12(b)(6) motion only if it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff.  *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  The court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### III.  ANALYSIS

Plaintiffs filed a motion to dismiss the third through the seventh amended counterclaims.  The Court will consider each of these counterclaims in turn.

### A.     THIRD AMENDED COUNTERCLAIM (Original Counterclaim # 6) – CIVIL THEFT

Defendants allege that Plaintiffs violated Colorado law by "seizing unauthorized control" of intellectual and other property, "taking over and stealing web sites and domain names," and changing "names and addresses in the websites" to deceive

members of the public out of their membership fees. (Doc. # 30, ¶¶ 36, 37.) Plaintiffs argue that Defendants do not "allege any facts," so their counterclaim must fail. (Doc. # 36 at 2.) A valid claim must show that Plaintiffs obtained control over Defendants' property in circumstances amounting to theft, robbery, or burglary. *See Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1221 (D. Colo. 2012).

Theft occurs when a person "takes another's property without authorization, or in more complicated circumstances, such as where the person, via deception, obtains the owner's authorization to take the property." *Martinez*, 886 F. Supp. 2d at 1221 (quoting *West v. Roberts*, 143 P.3d 1037, 1040 (Colo. 2006)). Defendants allege that after King left AAFM, he was able to steal websites and other property through his "access to passwords, the web site host, email accounts, files, service providers and domain name registrations and all other elements necessary to control the web sites, publications, member billing, and their content." (Doc. # 30, ¶ 35). Colo. Rev. Stat. § 18-4-405 provides that the owner of property taken by theft "may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property." Defendants allege that the stolen websites redirected customers from AAFM to Plaintiffs, who "knowingly, and with intent to do so, took, stole, and permanently deprived [Defendants] of substantial monies." (*Id.*, ¶ 37.) Therefore, the claim of theft is appropriately brought against all Plaintiffs.

Plaintiffs contend that the amended counterclaim is without factual basis regarding "when the change of control occurred, who participated, what customers were

'tricked,' [and] how much money was lost." (Doc. # 36 at 2.) However, Defendants allege facts in each of these areas: the change in control occurred after termination of King's and Baring's relationship with Defendants, it was Plaintiffs who participated in the theft, and the customers who were tricked were "members, customers, and potential customers of AAFM." (Doc. # 30, ¶¶ 36-38.) Defendants also suggest that the amount of money lost should be determined at trial. (*Id.*, ¶ 39). Therefore, the Court finds Defendants' civil theft allegations sufficient to state a counterclaim upon which relief may be granted.

**B.   FOURTH AMENDED COUNTERCLAIM (Original Counterclaim # 8) – INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**

Defendants allege that Plaintiffs intentionally interfered with their contractual relationships. Plaintiffs argue that the counterclaim contains no allegations that they knew of a contract between Defendants and a third party, no facts to permit the inference that the contract was breached due to Plaintiffs' action, and no claim of specific injury suffered by Defendants.[3] (Doc. # 31 at 7.) "To be liable for intentional interference with contract, a defendant must (1) be aware of a contract between two parties, (2) intend that one of the parties breach the contract, and (3) induce the party to breach or make it impossible for the party to perform the contract." *Krystkowiak v. W.O. Brisben Cos.*, Inc., 90 P.3d 859, 871 (Colo. 2004).

---

[3] Though Defendants bring a claim for intentional interference with contractual relationships, Plaintiffs urge the Court to apply a different test that pre-dates *Krystkowiak* and applies to claims for **tortious** interference with contracts. (Doc. # 31 at 6); *see R-G Denver, Ltd. v. First City Holdings of Colo., Inc.*, 789 F.2d 1469, 1474 (10th Cir. 1986) (citing *Comtrol, Inc. v. Mountain States Tel. and Telegraph Co.*, 513 P.2d 1082 (Colo. App. 1973)). The Court declines to do so.

Defendants' pleading contains allegations under each of the *Krystkowiak* factors. First, Defendants allege that Baring and King were aware of contracts Defendants had with Messrs. Li and Thong.  (Doc. # 30 at ¶ 44.)  Second, they allege that Plaintiffs intended Li and Thong to breach the contract as evidenced by Plaintiffs' knowing engagement "in a campaign of defamation, lies, assault and injury against [Defendants]."  (*Id.* at ¶ 47.)  Finally, Defendants allege that Plaintiffs induced Li and Thong to breach the contract.  (*Id.*)  Because the amended counterclaim satisfies the three *Krystkowiak* factors, it is sufficient to state a contractual interference claim.

## C.     FIFTH AMENDED COUNTERCLAIM (Original Counterclaim # 7) – CIVIL CONSPIRACY

Defendants allege civil conspiracy in that Plaintiffs Baring and King conspired to take over and steal websites and other property.  (Doc. # 30, ¶ 55.)  Plaintiffs contend that Defendants fail "to articulate what the individual Plaintiffs did, and when and how they did it, when they allegedly conspired to steal Defendants' website and materials." (Doc. # 31 at 8.)  In contending so, Plaintiffs confuse the Tenth Circuit's suggestion for how "a district court might helpfully advise a *pro se* litigant," *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (2007), with the actual elements required to state a civil conspiracy claim.  Parties asserting civil conspiracy claims must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result."  *Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (internal citation and quotation marks omitted); *Natural Wealth Real Estate, Inc. v. Cohen*, No. 05-cv-

01233-LTB-MJW, 2006 WL 3500624, at *7 (D. Colo. Dec. 4, 2006) (unpublished) (quoting *Jet Courier Service, Inc. v. Mulei*, 771 P.2d 486, 502 (Colo.1989)).

By naming King and Baring and alleging that they "agreed, by words or conduct to accomplish the unlawful goals of stealing and converting the web sites" and other property (Doc. # 30, ¶ 55), Defendants satisfy elements (1), (2), and (3) of the five-element *Scott* test. They satisfy elements (4) and (5) by referring to paragraphs 36-38, in which the unlawful overt act of theft is described (*id.*, ¶ 36, 37) and damages are alleged in the form of foregone benefits, financial or otherwise, from the diverted AAFM members (*id.*, ¶ 38).[4] Therefore, the Court finds Defendants' allegations of civil conspiracy sufficient to state a counterclaim (against Plaintiffs Baring and King only).

**D.    SIXTH AMENDED COUNTERCLAIM (Original Counterclaim # 5) – COPYRIGHT INFRINGEMENT**

Defendants allege that Plaintiffs violated the United States Copyright Act, 17 U.S.C. § 101, *et seq.*, by making stolen copyrighted works available on the Internet from "servers located in the State of Arizona in the United States." (Doc. # 30, ¶ 62). Plaintiffs argue that Defendants did not allege domestic copyright infringement, ownership of a valid copyright, or the copying of protected material, and also did not justify IABFM's inclusion as a counterclaim defendant. (Doc. # 31 at 8-10.)

To state a copyright infringement claim, Defendants "must show: (1) ownership of a valid copyright, and (2) copying by the [Plaintiffs] of protected components of the

---

[4] The Court admonished Defendants for "shotgun pleading," *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *7 (D. Colo. Jan. 18, 2013) (unpublished), but reference to certain united, enumerated paragraphs here is acceptable.

copyrighted material." *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 831 (10th Cir. 1993). Allegations of completely extraterritorial infringement do not suffice to state a claim. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994) (en banc); *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-91 (9th Cir. 1998) (a plaintiff may recover damages for extraterritorial distribution of copyrighted works if at least one alleged act of infringement is completed entirely within the United States).

To meet their burden here, Defendants must satisfy both *Gates* factors, show domestic infringement, and justify including IABFM as a Counterclaim Defendant. First, Defendants list five copyright registration numbers (Doc. # 30, ¶ 62) to satisfy the factor of copyright ownership. 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright . . . ."). Defendants then allege that entire copyrighted works were stolen and transferred to servers under Plaintiffs' control (Doc. # 30, ¶¶ 62-64) to satisfy the second *Gates* factor – copying protected components of the work. Plaintiffs' assertion that this allegation fails because Defendants do not allege facts identifying the particular protected components of the material (Doc. # 31 at 10) is unavailing; such particularity is required "in contexts addressing the merits of a claim, [but] not a motion to dismiss." *Skelton Fibres Ltd. v. Canas*, No. 96 Civ. 6031 DLC, 1997 WL 97835, at *3 (S.D.N.Y. Mar. 6, 1997) (unpublished). Third, Defendants show domestic infringement by alleging that Plaintiffs stole their copyrighted works, domiciled stolen domains in the United

States on GoDaddy.com, and made the works and domains available from servers located in Arizona. (Doc. # 30, ¶ 62.) Finally, Defendants properly included King, Baring, and IABFM as Defendants to this counterclaim. *Cf. Feder v. Videotrip Corp.*, 697 F. Supp. 1165, 1177 (D. Colo. 1988) (copyright infringement claims, which are typically brought forth against corporations, may also "be asserted against a stockholder or officer of a corporation . . . ."). Therefore, Defendants' copyright infringement allegations are sufficient to state a counterclaim.

### E. SEVENTH AMENDED COUNTERCLAIM (Original Counterclaim # 4) – VIOLATION OF COLORADO CONSUMER PROTECTION ACT

Defendants assert that Plaintiffs violated the Colorado Consumer Protection Act ("CCPA" or "Act"), Colo. Rev. Stat. § 6-1-105(1)(a), (b), and (c), by engaging in deceptive trade practices. (Doc. # 30, ¶ 70.) To bring a private cause of action under the Act, Defendants must allege: "(1) that [Plaintiffs] engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of [Plaintiffs'] business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of [Plaintiffs'] goods, services, or property; (4) that [Defendants] suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused [Defendants'] injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146-47 (Colo. 2003) (citation omitted). Plaintiffs contend that the claim fails because it (1) does not plead with the particularity required by Fed. R. Civ. P. 9 and (2) does not plead the public impact element of the Act. (Doc. # 31 at 10, 11.)

### 1. Federal Rule of Civil Procedure 9

Plaintiffs contend that the counterclaim fails to meet Fed. R. Civ. P. 9(b)'s heightened pleading requirement because it does not "identify any particular statements made by Plaintiffs, how they were allegedly fraudulent, where or when they were made, and how they impacted the public." (Doc. # 31 at 11.) Under Rule 9(b), CCPA claims must be pled with particularity. *Gates Corp. v. Dorman Prods., Inc.*, No. 09-cv-02058, 2009 WL 5126556, at *5 (D. Colo. Dec. 18, 2009) (unpublished); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985). Fed. R. Civ. P. 9(b) provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." While "claims under the Act are not precisely actions for fraud . . . allegations of deceptive trade practices under the Act are subject to Rule 9(b)'s requirement of particularity." *Duran*, 616 F. Supp. at 793. However, such particularity "only requires identification of the circumstances constituting fraud." *Id.* (internal quotation marks and citations omitted). Moreover, the Federal Rules of Civil Procedure

> do not require a factual basis for every allegation. Nor must every allegation, taken in isolation, contain all the necessary information. Rather, to avoid dismissal under Rules 9(b) and 8(a), plaintiffs need only show that, taken as a whole, a complaint entitles them to relief.

*U.S. ex rel. Lemmon v. Envirocare of Utah*, Inc., 614 F.3d 1163, 1173 (10th Cir. 2010).

Therefore, this Court must determine if the allegations are sufficiently particular regarding the circumstances, when taken as a whole, to entitle Defendants to relief. Defendants set forth the time as March 2009 to the present. (Doc. # 30, ¶ 69.) They

name the place as Arizona – and in the virtual sphere, the websites "www.aafm.org, www.aapmglobal.com, www.aafm.asia and www.aapmapac.com." (*Id.*, ¶ 62.) They identify Plaintiffs as those who allegedly changed "names and addresses in the web sites" (*id.*, ¶ 70) and engaged in the deceptive trade practices (*id.*, ¶¶ 69-75). Defendants set forth the consequences of said practices: the public was deceived into sending money and fees to Plaintiffs instead of to AAFM. (*Id.*, ¶ 70.)

Defendants' identification of the circumstances of the deceptive trade practices meets Rule 9(b)'s heightened pleading requirement for CCPA claims. By alleging "the time, place and contents of the false representation [and] the identity of the party making the false statements and the consequences thereof," *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000), Defendants have satisfied Rule 9(b).

### 2. Public Impact Element

Plaintiffs contend that the counterclaim is "clearly insufficient" to plead the public impact element of a CCPA claim because it "generically asserts that actual and potential customers have been affected – nothing more." (Doc. # 31 at 11.) For public impact to be sufficiently pleaded in a CCPA claim, the challenged trade practice must be shown to have significantly impacted the public. *Rhino Linings,* 62 P.3d at 146-47. The three factors a Court analyzes to determine whether such a pleading is sufficient are: "(1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practice has previously

impacted other consumers or has the significant potential to do so in the future." *Id.* at 149 (citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)).

> a)   *Number of consumers directly affected by the alleged deceptive trade practice*

Defendants assert that Plaintiffs' acts "significantly impact the public as actual or potential customers of [Plaintiffs'] goods and services." (Doc. # 30, ¶ 73.) By itself, this "'formulaic recitation of the elements of a cause of action'" would not pass muster, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555), and Plaintiffs contention that the counterclaim is generic and "nothing more" (Doc. # 31 at 11) would be correct. The counterclaim, however, includes additional, specific allegations of public reach:

> Through the controlled and altered web sites and with the aid of the stolen service marks, domain names, copyrighted manuals, business data and member information that was included in the content of the web sites, [Plaintiffs], through impersonation of AAFM, engaged in communications with members, customers, and potential customers of AAFM, that believed they were communicating with authorized agents of AAFM, so as to divert members and potential members and their payments to [Plaintiffs].

(Doc. # 30, ¶ 71.)

The question is whether those allegations are sufficient to meet the requisite pleading standard – that is, whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While not alleging the specific number of actual or potential customers affected, Defendants suggest a broad scheme that was perpetrated on at least four websites and involved direct "communications with members, customers, and potential customers." (Doc. # 30, ¶¶ 69-71); *cf. Hall*

*v. Walter*, 969 P.2d 224, 235 (Colo. 1998) (defendants' practices "implicated the public as consumers because the misrepresentations were directed at the market generally, taking the form of widespread advertisements and deception of actual and prospective purchasers"). Given that the alleged deception prevented Defendants from receiving communication from their customers and the public at large, it would be unrealistic to require them to plead the actual number of individuals affected.

                    *b)*      *Relative sophistication and bargaining power of the consumers affected by the challenged practice*

The second public impact factor is the relative sophistication and bargaining power of the parties. *See Martinez*, 969 P.2d at 222. Here, the consumers affected were "public members, customers, and existing or potential business partners of AAFM." (Doc. # 30, ¶ 70.) Plaintiffs, on the other hand, were experienced trainers, webmasters, and teachers. (*See* Doc. # 14, ¶¶ 10, 11.) While AAFM members may be sophisticated businesspeople, neither party has alleged that this sophistication equates to Internet savvy or the ability to detect when one's correspondence through a known website is being transmitted to an unintended recipient. Moreover, neither party has suggested a way to assess the relative sophistication of the potential customers and individuals at large who may also have visited the websites. Thus, because of the nature of the alleged deceptive trade practice, the relative sophistication factor supports – or at least does not hamper – Defendants' ability to show significant public impact.

### c) *Challenged practice has previously impacted other consumers or has the significant potential to do so in the future*

The final factor to consider in deciding if there is a significant public impact is whether "the challenged practice previously has impacted other consumers or has significant potential to do so in the future." *Martinez*, 969 P.2d at 222. Defendants have alleged a broad scheme that has had an impact on consumers. (Doc. # 30, ¶¶ 70, 71, 73.) The scheme has the potential to impact consumers in the future, because Plaintiffs currently maintain control over Defendants' stolen websites and domains. (*Id.*, ¶ 69.)

Defendants' factual allegations have "nudged their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 547, albeit by a very small margin. Under *Rhino Linings*, the three public impact factors are "*relevant considerations* to determine whether a challenged practice significantly impacts the public within the context of a CCPA claim." 62 P.3d at 149 (emphasis added). And under Rule 9, the particularity required of the claim is only that the circumstances of fraud be identified. *Duran*, 616 F. Supp. at 793. Though Defendants do not directly allege all three public impact factors or provide copious data to support their counterclaim, their allegations regarding Plaintiff's deceptive business practices identify the circumstances and facts sufficiently to satisfy the heightened pleading requirement under Fed. R. Civ. P. 9(b) and plead a valid claim for a CCPA violation.

## IV. CONCLUSION

Despite Plaintiffs' repeated and cursory contentions that Defendants have done little or nothing to cure the defects of their original pleadings,[5] Defendants' counterclaims, as amended, include sufficient factual bases to state valid claims under the required pleading standards. Accordingly, Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Doc. # 31) is DENIED. It is

ORDERED that all seven of Defendants' Amended Counterclaims remain, with the proviso that the Fifth Amended Counterclaim remains only against Plaintiffs King and Baring.

DATED: July   17  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[5] Plaintiffs' Motion to Dismiss and Reply largely ignore the additional factual information provided by Defendants and are replete with statements such as "Defendants' 'amended' Counterclaims continue to suffer from the same issues which plagued them in the first instance and resulted in their dismissal" (Doc. # 36 at 1) and "Defendants' complete lack of regard for the Court's Order and Opinion, as well as the federal pleading requirements, emphasizes once and for all that Defendants' [Amended] Counterclaims are simply an attempt to throw everything against the wall to see what sticks" (Doc. # 31 at 8).